# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **ZOND, INC.** | § | |
| | § | |
| Plaintiff | § | |
| v. | § | |
| **TOSHIBA CORPORATION,** | § | 1:13-CV-11581 - DJC |
| **TOSHIBA AMERICA, INC.,** | § | |
| **TOSHIBA AMERICA ELECTRONIC** | § | |
| **COMPONENTS and TOSHIBA** | § | |
| **AMERICA INFORMATION SYSTEMS** | § | |
| | § | |
| Defendants. | § | |

***[PROPOSED]* REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED
COMPLAINT**

Zond's Opposition (D.I. 16) is replete with fact assertions not found in its Amended Complaint (D.I. 13). When the focus is appropriately returned to the allegations of the Amended Complaint, Zond's direct infringement pleadings are deficient with respect to Section 271(g) — according to Zond's own position regarding the requisite element of proximity of the patented process to the accused product. Notwithstanding those pleading deficiencies, Zond's complaint should also be dismissed because the plasmas that may be produced by Zond's patented methods are not "physical goods that were manufactured," to which "products" covered by Section 271(g) are limited as a matter of law. Finally, Zond's arguments regarding its deficient willful infringement pleadings are entirely unavailing, and it has at best identified splits in non-binding authority regarding the pleading required for its induced infringement allegations. When the underlying reasoning of the relevant authority is considered, Zond's willfulness and induced infringement pleadings should be dismissed.

## I.   Zond's Deficient Direct Infringement Allegations Merit Dismissal

While citing non-binding authority that Form 18 governs Section 271(g) infringement claims (*see* Opposition at 4),[1] Zond has not attempted to reconcile the tension between *Twombly*, which the Supreme Court has stated applies to "all civil actions,"[2] and Form 18. Unlike Zond, Toshiba has pointed this Court to a persuasive framework by which the tension can most satisfactorily be resolved: by strictly construing Form 18 as exemplary for pleading direct infringement in accordance with the kind of infringement exemplified by the form, which certainly does not include infringement under Section 271(g), a cause of action that was created a half century after the form became effective. *See* Motion at 10–11; *see also Eli Lilly & Co. v.*

---

[1] The split panel decision in *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012) applied the regional law of the Sixth Circuit, as is required on a 12(b)(6) motion to dismiss. *See* 681 F.3d at 1331. Moreover, *Bill of Lading* indisputably did not address a Section 271(g) claim.
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

*Am. Cyanamid Co.*, 82 F.3d 1568, 1571 (Fed. Cir. 1996) ("Prior to the enactment of the [Process Patent Amendments Act (PPAA)], a patentee holding a process patent . . . had no cause of action if such persons used the patented process abroad . . . ."). Indeed, the Federal Circuit (applying Ninth Circuit law) has recently counseled against seeking "to create a conflict where none exists" as between Rule 8(a), as construed by *Twombly/Iqbal*, and Form 18.    *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013). Thus, a "compliant containing just enough information to satisfy a governing form may well be sufficient under *Twombly* and *Iqbal*." *Id.* (emphasis added).    Where, as here, Form 18 was plainly not drafted with Section 271(g) infringement in mind, it should not be stretched to cover that situation; instead, the general principles announced in *Twombly* and *Iqbal* for plausibility are the best guide.

Moreover, despite Zond's attempts to insert additional unpled facts into this dispute (*see, e.g.*, Opposition at 1–3, 10–12), the Amended Complaint fails to allege facts from which the requisite proximity between Zond's claimed method and the accused Toshiba chips can be inferred. As Toshiba pointed out in its Motion, Zond does not allege that the plasmas produced by its patented methods have become a nontrivial and essential component of the accused chips. Motion at 8. Moreover, the Amended Complaint does not support an inference of proximity even under the test advanced by Zond. *See* Opposition at 9–10. Although Zond attempts to re-characterize the Amended Complaint as alleging "that Toshiba's accused chips would not be commercially possible but for Zond's patented processes," *id.* at 10, the complaint contains no such allegation nor facts supporting such an inference. At best, the complaint alleges that semiconductor manufacturing processes "require a way to generate a high-density plasma," that Zond's process "can be used" in such generation, and that it "can be used" to deposit certain

materials to form transistors. *See* Am. Cmplt. at ¶¶ 19–20. This is a far cry from the proximity test Zond propounds. *See* Opposition at 10.

## II.  Plasmas Fall Outside the Scope of 271(g) as a Matter of Law

Zond's pleadings and the asserted patents affirmatively demonstrate that Zond's Section 271(g) claim fails as a matter of law. As set out in Toshiba's Motion, plasmas are the products of Zond's patented methods, and the Federal Circuit has concluded that Section 271(g), as a matter of law, "applies only to physical goods." *Bayer, AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1371 (Fed. Cir. 2003). Zond attempts to distinguish *Bayer* on the basis that a plasma is "not 'information,' but a state of physical matter." Opposition at 8. Zond misses the point. In order to determine whether "information" was covered by Section 271(g), the court first construed Section 271(g), repeatedly holding that the statute is "limited to physical goods that were manufactured." Thus the court concluded that "information" was beyond the scope of Section 271(g)'s coverage. *See* 340 F.3d at 1368; *see also id.* at 1371, 1373, 1374, 1377. So, too, are plasmas, which like information are not physical goods, but rather, a state of matter.

The *Bayer* decision makes clear that, notwithstanding the physical nature of a plasma, it is not a "physical *product*" as contemplated by the Federal Circuit, which repeatedly referred to, e.g., Congress's concern "with tangible products," and "manufactured articles." *Id.* at 1376 (emphasis added). Merely having a physical form does not make the plasmas of Zond's patents any more a "physical product" within the scope of Section 271(g) than, for example, the "email packets" considered by the Federal Circuit in *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1323 (Fed. Cir. 2005). There, the Federal Circuit looked to the claims of the asserted patents — and in particular, the claims' preambles — to determine they were directed toward "transmitting information" as a matter of law. *Id.* Notwithstanding the patentholder's arguments

regarding the sub-molecular physical structure of email within a computerized device, and the "tangible result" brought about by its claimed process, the Federal Circuit held that "[b]ecause the 'transmission of information,' like the 'production of information,' does not entail the manufacturing of a physical product, section 271(g) does not apply to the asserted method claims in this case any more than it did in *Bayer*." *Id.* The district court in *NTP* therefore "erred in not holding as a matter of law that § 271(g) was inapplicable to the asserted method claims." *Id.* at 1324.

It is therefore similarly appropriate for this Court to look to the claims to determine to what they are directed — plasmas. *Compare Yangaroo, Inc. v. Destiny Media Techs., Inc.*, 720 F. Supp. 2d 1034, 1038 (E.D. Wis. 2010) (similarly examining the claim preambles in determining that the asserted patent "claims no method or process for the creation of the content that Yangaroo argues constitutes the product that is essential to establish infringement under section 271(g)"). Indeed, even Zond itself refers to its patented processes as directed toward plasmas in the various permutations identified by Toshiba in its Motion. *See* Motion at 1–2 & 8; *compare* Opposition at 11 (referring to "the 'strongly-ionized plasma,' the 'high-density plasma,' the 'high-deposition rate sputtering,' the 'sputtering flux,' and other physical things to which Zond's processes are directed" (emphasis added)). Tellingly, out of all of the method claims in the 7 asserted patents, Zond can point only to two claims that even mention a substrate (and 1 of those only as part of a "substrate support"). *See* Opposition at 2 & 10 (citing claim 42 of the '421 patent and claim 34 of the '652 patent). Yet even for these claims, each respective patent and Zond's own pleadings make clear that this is simply one potential application for the plasmas produced by Zond's patented methods. *See, e.g.,* Am. Cmplt. at ¶ 18 ("Zond's strongly ionized plasma technology has application in various industries . . . ."). Moreover, even when

Zond's patents include apparatus (i.e., non-method) claims, those are directed toward plasma generating devices, further pointing up plasma as the subject matter of the concomitant method claims.

Zond's attempts to box this case into the facts of *Bio-Technology General Corp. v. Genentech, Inc.* are unavailing. As noted by the Federal Circuit, the PPAA's "legislative history precisely anticipated th[e] fact situation" before the court, and that legislative history indicated Congress's intent that "infringement of a process for making a plasmid is not to be avoided by using it to express its intended protein." *Bio-Tech.*, 80 F.3d 1553, 1561 (Fed. Cir. 1996) (quoting and discussing S. Rep. No. 83, 100th Cong., 1st Sess. 51 (1987)). Unlike the claimed process for making a plasmid before the court in *Bio-Technology*, nothing in the Senate Report addresses processes for making plasmas. In addition to noting that infringement is not avoided by "using [a plasmid] to express *its intended protein*," the Federal Circuit observed that the patent at issue in *Bio-Technology* "explicitly contemplates that the patented process will be used as part of an overall process for producing hGH." *Id.* (emphases added). In other words, the plasmid (as with all plasmids) had a singular direct end purpose — to produce its intended protein, which for the plasmid at issue in *Bio-Technology* was hGH. By contrast, the plasmas here, assuming Zond's own allegations to be true, have multiple (and quite disparate) potential purposes. *See, e.g.*, Am. Cmplt at ¶ 18.

For these reasons, Zond's plasmas fall outside the scope of Section 271(g)'s coverage as a matter of law. Should this Court desire more development of these issues, Toshiba respectfully requests that the court consider an early summary judgment focused on the issue of whether 271(g) reaches the conduct of which Zond complains, with limited discovery focused on that issue.

### III.   Zond's Induced and Willful Infringement Claims Should Likewise be Dismissed

#### A.   Insufficient Direct Infringement Allegations

Zond does not deny that the allegations of direct infringement underlying its induced infringement claim (i.e., that Toshiba's customers directly infringe Zond's patents by using, selling, etc. products that contain the accused Toshiba chips) are themselves allegations of direct infringement according to Section 271(g). Accordingly, those allegations of direct infringement fail for at least the reasons set forth above with respect to Zond's direct infringement allegations against Toshiba.

Additionally, even under the bare minimum standards established for allegations in Form 18 advocated by Zond, the allegations of direct infringement underlying its induced infringement claims fail. In sum, Zond needed to plead facts sufficient to show the alleged direct infringers — in this context, Toshiba's customers — had notice of the patents. It did not, and indeed, Toshiba believes it cannot.

Form 18, as applied by the Federal Circuit, requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) <u>a statement that the plaintiff has given the defendant notice of its infringement</u>; and (5) a demand for an injunction and damages.

*In re Bill of Lading*, 681 F.3d at 1334 (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007)) (emphasis added). In *Bill of Lading*, the Federal Circuit applied Form 18 to allegations of direct infringement underlying claims for indirect infringement. *See id.* at 1333, 1335. Accordingly, even courts applying the bare minimum Form 18 standard advocated by Zond have held direct infringement claims to be insufficient under the Form for failure to allege pre-suit notice. *See, e.g., Littlefuse, Inc. v. Pac. Eng'g Corp.*, 12-CV-14957, 2013 WL

4026918, at *1–2 (E.D. Mich. Aug. 7, 2013) (applying Form 18 to direct infringement

allegations, and noting that it "requires that a complaint contain" an allegation of notice (citing

and discussing *K-Tech Telecomms*, 714 F.3d at 1279; *Bill of Lading*, 681 F.3d at 1334)); *accord*

*Best Med. Int'l, Inc. v. Accuray, Inc.*, 2:10-CV-1043, 2010 WL 5053919 (W.D. Pa. Dec. 2, 2010)

("Indeed, Plaintiff has cited to *McZeal* [*v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007)]

and is presumably aware of the elements of a *prima facie* case set forth therein. Because such

'notice' is an essential element of the *prima facie* case, the 'direct infringement' cause of action

must be dismissed.").[3]

## B.    Insufficient Allegations of Knowledge

Zond does not address the deficiencies in its allegations of pre-suit knowledge identified

by Toshiba in its Motion.   Instead, Zond merely points to district courts addressing different

underlying bases of pre-suit knowledge (and one of those cases, *ParkerVision*, deals with

knowledge "of the <u>direct infringement of its customers</u>," not pre-suit knowledge of the patents).

*See* Opposition at 14 (citing *ParkerVision, Inc. v. Qualcomm Inc.*, No. 3:11-CV-719-J-37TEM,

2013 WL 1277894 (M.D. Fla. Mar. 28, 2013); *Titanide Ventures, LLC v. IBM Corp.*, No. 4:12-

CV-196, 2012 WL 5507327 (E.D. Tex. Oct. 18, 2012)).   More importantly, Zond fails to explain

how even speculative allegations regarding a 2007 trade show could support pre-suit knowledge

of the two asserted patents that *weren't even issued at that time* (the '716 and '184 patents).

Instead, it points vaguely to other unidentified "industry conferences" for which it did not even

allege Toshiba's or its own attendance.

---

[3] Pre-suit notice is equally applicable to Section 271(g) claims as it is to 271(a) claims. *See* 35 U.S.C. § 287(b)(2) ("No remedies for infringement under section 271(g) shall be available with respect to any product in the possession of, or in transit to, the person subject to liability under such section before that person had notice of infringement with respect to that product.").

Alternatively, Zond cites post-suit knowledge based upon the Original Complaint. This argument hinges on what Zond asserts to be a "majority view" that "coalesced" at an undisclosed time in a still-highly divided area of case law: that knowledge of the patents for purposes of inducement allegations can be based on the filing of the very complaint alleging infringement. Zond provides little reasoned basis for this boot-strapping, aside from "other courts have done it" — but of course, numerous other courts, including Judge Hillman within this district,[4] have recognized that knowledge of the asserted patents cannot and should not be based upon the very complaint for infringement itself.[5] This is for good reason:

> Because notice of the patent is necessarily provided by a complaint, finding that a complaint provides sufficient knowledge for induced infringement would vitiate the Supreme Court's holding in *Global-Tech* that an allegation of knowledge of the patent is required to state a claim for induced infringement.

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012) (discussing *Global-Tech Appliances, Inc. v. SEB S.A.*, --- U.S. ----, 131 S.Ct. 2060, 2068 (2011)). Furthermore, requiring pre-suit knowledge "furthers judicial economy and preserves parties' resources by encouraging resolution prior to filing a lawsuit," whereas permitting Zond to "bootstrap the knowledge Defendants *now* have based on . . . filing of the

---

[4] *Select Retrieval, LLC v. Bulbs.com Inc.*, No. 12-10389-TSH, 2012 WL 6045942 , at *5 (D. Mass. Dec. 4, 2012) (collecting cases).
[5] Perhaps in an attempt to shore up its assertion that it follows the "majority" position, Zond implies that district court decisions are uniform among multiple circuits. *See* Opposition at 15 n.7. Yet Zond ignores (or did not notice) splits of authority even within those circuits. *See, e.g., Pacing Techs., LLC v. Garmin Int'l, Inc.*, 12-CV-1067 BEN WMC, 2013 WL 444642 (S.D. Cal. Feb. 5, 2013) ("District courts are divided on the issue, even within this circuit.") **(9th Circuit)**; *Execware, LLC v. Staples, Inc.*, CIV.A. 11-836-LPS, 2012 WL 6138340, at *5 (D. Del. Dec. 10, 2012), *report and recommendation adopted*, CIV.A. 11-836-LPS, 2013 WL 171906 (D. Del. Jan. 16, 2013) ("The case law in this district is divided on the issue . . . .") **(3rd Circuit)**; *compare Achates Ref. Pub., Inc. v. Symantec Corp.*, No. 2:11cv294, 2013 WL 693955, at *2 (E.D. Tex. Jan. 10, 2013) (post-suit knowledge sufficient) *with Aguirre v. Powerchute Sports, LLC*, 2011 WL 2471299, at *3 (W.D. Tex. 2011) (post-suit knowledge insufficient) **(5th Circuit)**; *compare also Smartwater, Ltd. v. Applied DNA Scis., Inc.*, 12-CV-5731-JS, 2013 WL 5440599, at *8 (E.D.N.Y. Sept. 27, 2013) *with Pfizer, Inc. v. Gelfand*, 2008 WL 2736019, at *1 (S.D.N.Y. 2008) (requiring pre-suit knowledge of patent) **(2d Circuit)**. Given the vast amount of conflicting case law on this issue, Toshiba will not attempt to opine whether its position is the "majority" — it is enough that it is better-reasoned.

Complaint onto defendant's acts *before* Plaintiff filed its Complaint" would improperly premise liability on "acts [Toshiba] did without knowledge." *Proxyconn Inc. v. Microsoft Corp.*, SACV 11-1681 DOC ANX, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012).

Moreover, Zond omits a critical component of the analysis among even those courts that conclude post-suit knowledge is adequate: "pre-suit knowledge of the patent must be alleged unless the plaintiff limits its cause of action for indirect infringement to post-litigation conduct." *Execware, LLC v. Staples, Inc.*, CIV.A. 11-836-LPS, 2012 WL 6138340, at *5 (D. Del. Dec. 10, 2012), *report and recommendation adopted*, CIV.A. 11-836-LPS, 2013 WL 171906 (D. Del. Jan. 16, 2013) (emphasis added).   Indeed, the very case Zond primarily relies upon highlights this "important consequence of relying on the filing and service of the infringement suit to satisfy the knowledge requirement." *Rembrandt Soc. Media, LP v. Facebook, Inc.*, --- F. Supp. 2d ----, 2013 WL 2950342, at *5 (E.D. Va. June 12, 2013); *see also Intellect Wireless Inc. v. Sharp Corp.*, No. 10cv6763, 2012 WL 787051, *11 (N.D.Ill. Mar. 9, 2012) ("[d]efendants' knowledge of the patent as of the time of the suit's commencement can satisfy the knowledge requirement for conduct that post-dates the date of the complaint" (emphasis added)).   The allegations supporting induced infringement in the Amended Complaint, however, are not limited to post-suit conduct; thus, these allegations fail even under the position Zond advocates.

## C.    Post-Suit Conduct Cannot Support Willful Infringement Claims

As noted above, Zond has failed to demonstrate why its speculative allegations regarding a trade show pass muster under Rule 8(a) as applied by *Twombly/Iqbal* — particularly with respect to the '716 and '184 Patents issued *after* the only trade show identified in its complaint.

This leaves it with only post-suit conduct to support its willfulness claim.  On this point, the instructions from the Federal Circuit are clear: a patentholder "should not be allowed to

accrue enhanced damages <u>based solely on the infringer's post-filing conduct</u>." *In re Seagate Technology, LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). This Court recognized in *Englishtown* that, based on this language, several courts "conclude that *Seagate* prohibits plaintiffs from alleging willful infringement based solely upon post-filing conduct unless they also seek preliminary injunctive relief to stop such conduct." *Englishtown, Inc. v. Rosetta Stone Inc.*, CIV.A. 12-10636-NMG, 2013 WL 3892829 (D. Mass. July 25, 2013). Contrary to Zond's implication, the *Bulbs.com* decision does not provide a basis for ignoring these plain instructions. Quite to the contrary, Judge Hillman in *Bulbs.com* simply recognized the several courts that, like this Court in *Lexington*, have refused to use *Seagate* to impose "<u>heightened</u> pleading requirements" for willful infringement. *See Lexington Luminance LLC v. Osram Sylvania Inc.*, No. 12-11551-NMG, 2013 WL 5202424, at *5 (D. Mass. Sept. 11, 2013); *compare Bulbs.com*, 2012 WL 6045942, at *6. This issue is distinct from whether to allow claims only for post-suit willfulness to go forward in the absence of preliminary injunctive relief in contravention of the Federal Circuit's instructions, as shown by examining the very case cited by *Bulbs.com* for the proposition: *Milwaukee Elec. Tool Corp. v. Hitachi Koki, Ltd.*, 09-C-948, 2011 WL 665439 (E.D. Wis. Feb. 14, 2011). There, the complaint alleged pre-suit knowledge of the patents. *Id.* at *1. The court simply rejected the argument that willfulness pleading requires allegations showing "objective recklessness" as to a "high likelihood" that the alleged actions "constituted infringement of a valid patent." *Id.* at *3.[6]

Regarding the alleged "exception" to this rule followed in *Lexington* and *Englishtown*, Zond cannot have it both ways. After claiming to have a "marketing and sales arm . . . to

---

[6] The same distinction is apparent in each case in turn cited by *Milwaukee Elec. See Rambus, Inc. v. Nvidia Corp.*, C 08-3343 SI, 2008 WL 4911165 (N.D. Cal. Nov. 13, 2008) (rejecting argument that patentholder must plead high likelihood of infringing the asserted patents); *Plant 21 LLC v. Cascade Greenhouse*, C07-5640-BHS, 2008 WL 3540602 (W.D. Wash. Aug. 8, 2008) (stating that *Seagate* does not impose heightened pleading standard).

commercialize Zond's patented technology," to have "showcased" its "patented technology . . . including through presentations and marketing materials," and to face "irreparable harm" unless Toshiba's alleged infringement is enjoined (*see, e.g.*, Am. Cmplt. at ¶¶ 17, 32, 40), Zond now asks this Court to believe that it "is a technology development company" that "does not manufacture semiconductor chips" and "is not a competitor to Toshiba."   Opposition at 20. Toshiba respectfully submits that the allegations of Zond's complaint should control the analysis on this point, rather than those crafted in an attempt to avoid the plain application of the Federal Circuit's holding in *Seagate*.  *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) ("Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint . . . .").

Dated:   November 5, 2013                    Respectfully submitted,

                                             By: */s/ Daniel J. Cloherty*
                                                 Daniel J. Cloherty
                                                 **Collora, LLP**
                                                 100 High St., 20th Fl.
                                                 Boston, MA 02110
                                                 Telephone:  617-371-1000
                                                 dcloherty@collorallp.com

                                                 L. Gene Spears
                                                 Scott F. Partridge
                                                 **BAKER BOTTS, L.L.P.**
                                                 910 Louisiana Street
                                                 Houston, Texas 77002
                                                 Telephone:  713-229-1590
                                                 scott.partridge@bakerbotts.com
                                                 gene.spears@bakerbotts.com
                                             **ATTORNEYS FOR DEFENDANTS**


### Certificate of Service

    I hereby certify that this document, filed through the ECF system, will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on November 5,
2013.

                                             */s/ Daniel J. Cloherty*
                                             Daniel J. Cloherty