UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZOND, LLC, | ) )  ) |
| Plaintiff | ) ) |
| v. | ) Civil Action No. 13-cv-11581-DJC ) |
| TOSHIBA CORPORATION, TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC., and TOSHIBA AMERICA INFORMATION SYSTEMS, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                             **August 14, 2014**

**I.     Introduction**

Plaintiff Zond, LLC ("Zond") brings this action against Toshiba Corporation, Toshiba America Electronic Components, Inc. and Toshiba America Information Systems, Inc. (collectively, "Toshiba") for direct, induced and willful infringement of seven of its patents pursuant to 35 U.S.C. §§ 271(g) and (b).  Toshiba now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  D. 14.  For the reasons set forth below, Toshiba's motion is DENIED.

**II.    Background**

This summary is drawn from the factual allegations in the amended complaint.  Zond is a Massachusetts-based technology development company.  Am. Compl., D. 13 ¶ 16.  Its patents "are generally directed to the generation, use and/or applications of unique plasma discharge technology that employs a strongly ionized plasma of commercial significance and has wide-ranging applicability in various industries."  Id.  The plasmas generated using Zond's processes

1

can be used in the manufacture of semiconductor chips, of which Toshiba is a designer and manufacturer. Id. ¶¶ 18-21.

On July 3, 2013, Zond filed its initial complaint in this action, alleging that a subset of the Toshiba defendants infringed eight of Zond's patents. D. 1. On September 27, 2013, Zond filed its amended complaint, adding an additional Toshiba defendant and narrowing the patents-in-suit to seven. D. 13. Zond alleges that, in violation of 35 U.S.C. § 271(g), Toshiba directly infringes Zond's patents by "using, offering to sell and selling within the United States, and importing into the United States, without authority," D. 13 ¶¶ 35, 42, 49, 56, 63, 70, 77, certain semiconductor devices manufactured overseas. Id.¶ 24. Specifically, Zond alleges that Toshiba could not manufacture the allegedly infringing semiconductor devices without using Zond's patented processes. Id. ¶¶ 24-31.

Zond further claims that Toshiba induced the infringement of Zond's patents by "knowingly and with intent, actively encouraging its customers, suppliers, original equipment manufacturers ("OEMs") and original design manufacturers ("ODMs") to use, sell, offer for sale, and import" the infringing semiconductor devices. Id. ¶¶ 36, 43, 50, 57, 64, 78. According to Zond, "Toshiba actively entices its OEMs and ODMs through advertising, marketing and sales activity to use Toshiba's [semiconductor devices] as part of their own infringing products and to sell, offer for sale and import those infringing products containing [the semiconductor devices] in the United States." Id.

Zond's final claim is for willful infringement. Id. ¶¶ 37, 44, 51, 58, 65, 79. Zond contends that Toshiba's continued infringement since it became aware of Zond's patents demonstrates a "deliberate and conscious decision to infringe" the patents-in-suit, "or at the very least, a reckless disregard of Zond's patent rights." Id.

**III. Discussion**

  **A.     Direct Infringement**

   *1.     Pleading Standard*

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the general standard set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) govern. To survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. For a claim to be plausible, the complaint must contain sufficient facts that, accepted as true, would allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This standard requires "more than the sheer possibility that a defendant has acted unlawfully." Id. "A complaint that merely pleads facts that are consistent with a defendant's liability 'stops short of the line between possibility and plausibility . . . .'" In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1332 (Fed. Cir. 2012) (quoting Twombly, 550 U.S. at 546).

The Appendix of Forms to the Federal Rules of Civil Procedure contains Form 18 which sets forth a sample complaint for direct patent infringement. Form 18 requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that the defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

In re Bill of Lading, 681 F.3d at 1334 (quoting McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

Toshiba argues that the requirements of pleading under Form 18 should not govern in light of the plausibility standard articulated in Iqbal and Twombly. However, Fed. R. Civ. P. 84

provides that "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Moreover, the Notes to this Rule observe that the forms contained in the Appendix "are sufficient to withstand attack under the rules under which they are drawn, and that the practitioner using them may rely on them to that extent." Fed. R. Civ. P. 84. As the Federal Circuit has ruled, "[t]he language of Rule 84 and the Advisory Committee Notes make 'clear that a pleading, motion, or other paper that follows one of the Official Forms cannot be successfully attacked.'" In re Bill of Lading, 681 F.3d at 1334 (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3162 (2d ed. 1997)). Accordingly, Form 18 continues to control the pleading requirements for a claim of direct infringement under 35 U.S.C. § 271(g). Id. at 1334 (rejecting argument that "Twombly and its progeny conflict with the Forms and create differing pleadings requirement" and concluding that Form 18 still governs the sufficiency of a pleading asserting a direct infringement claim); K-Tech Telecomms., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1283 (Fed. Cir. 2013) (noting that "proper use of a form contained in the Appendix of Forms effectively immunizes a claimant from attack regarding sufficiency of the pleading"); Zond, Inc. v. Fujitsu Semiconductor Ltd., No. 13-11634, 2014 WL 69035, at *3 (D. Mass. Jan. 9, 2014) (concluding that "where there is a relevant appended form, the standard provided by it is the standard by which all relevant complaints ought to be evaluated" and applying the Form 18 standard to assess the sufficiency of claim for direct infringement); Select Retrieval, LLC v. Bulbs.com Inc., No. 12-10389, 2012 WL 6045942, at *3 (D. Mass. Dec. 4, 2012).[1]

---

[1] Toshiba also urges this Court to resolve the alleged conflict between Form 18 and the precedents of Iqbal and Twombly by limiting the use of Form 18 to claims of direct infringement of one patented device by another device of the same type. D. 15 at 11. There is no case law to support such an interpretation and the Court declines to adopt this interpretation.

Zond's amended complaint satisfies the requirements of Form 18. Zond asserts jurisdiction and its ownership of the seven patents-in-suit. D. 13 ¶¶ 6, 9-15. The pleading alleges that Toshiba has infringed the patents by "using, offering to sell and selling within the United States, and importing into the United States, without authority," the infringing semiconductor devices. D. 13 ¶¶ 35, 42, 49, 56, 63, 70, 77. Notice to Toshiba may be inferred from the filing of the complaint. Fujitsu, 2014 WL 69035 at *3; see K-Tech, 714 F.3d at 1285 n.3. The pleading also seeks injunctive relief and damages. Accordingly, the amended complaint sufficiently pleads direct infringement under Form 18.

### 2. *Application of 35 U.S.C. § 271(g)*

Zond's claim for direct infringement arises under 35 U.S.C. § 271(g) which provides that "[w]hoever without authority imports into the United States or offers to sell, sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale or use of the product occurs during the term of such process patent." This protection does not extend to a "product which is made by a patented process" if that product "(1) . . . is materially changed by subsequent processes; or (2) it becomes a trivial and nonessential component of another product." Id. These two limitations require an analysis of the proximity of the patented process to the product ultimately imported, marketed or sold in the United States. Bio-Tech. Gen. Corp. v. Genentech, Inc., 80 F.3d 1553, 1561 (Fed. Cir. 1996).

Toshiba argues that that the microchips contained within its semiconductor devices cannot infringe upon Zond's patents because the product of Zond's patented processes – plasma – is a trivial and nonessential component of those chips. D. 15 at 12-13. Indeed, according to Toshiba, the plasma is not part of the chips at all. Id. at 13. Toshiba explains that the plasma is

an "ionized gas" that is brought into contact with a "sputtering target in a magnetron sputtering device . . . ." Id. The plasma's ions dislodge, or "sputter," atoms from the target, then the dislodged ("sputtered") atoms are "deposited as a film on the target substrate." Id. at 12-13. Because the plasma is not a physical product in and of itself, says Toshiba, Section 271(g) does not apply. Id. at 13.

This interpretation of Section 271(g), however, misses the mark. The target of Section 271(g) is the importation of a product made using a patented process or its subsequent sale within the United States. Bayer AG v. Housey Pharms., Inc., 340 F.3d 1367, 1375 (Fed. Cir. 2003). While Toshiba is correct that the statute requires a physical product, the offending physical product is that which was manufactured using the patented process. Id. at 1377. What is important here is not the plasma itself, but the process used to obtain the plasma and the uses to which to plasma is put. Zond alleges that Toshiba used its patented processes, including the generation of the plasma, as steps in the manufacture of Toshiba's chips. D. 13 ¶ 24. That is conduct prohibited by Section 271(g). See Bio-Tech., 80 F.3d at 1561 (holding that a protein made by a host organism expressing an inserted plasmid was a product "made by" a patented process for creating the plasmid).

Toshiba relies largely on Bayer, 340 F.3d at 1378. There, Bayer sued Housey Pharmaceuticals, Inc. for a declaratory judgment of, *inter alia*, invalidity of Housey's patents of a method of screening for substances which inhibit or activate a particular protein affecting the "cultural or morphological characteristics of the cell expressing the protein." Id. at 1369. Housey asserted a counterclaim for infringement under § 271(g) targeting both information gleaned by the patented process and the drug made using that information. Id. at 1370. Specifically, the information at issue allowed Bayer, as the user of the patented process, to know

whether a substance was an inhibitor or activator of a target protein. Id. Housey argued that this information was a product made by the patented process and thus within the scope of § 271(g). Id. at 1371. The court held that the reach of § 271(g) is limited to physical goods that are manufactured and not to the production of information. Id. at 1377. The court further held that the drug made by Bayer using the information acquired using the patented process was also beyond the scope of § 271(g) because the patented process must be used directly in the manufacture of the product and "not merely as a predicate process to identify the product to be manufactured." Id. at 1378.

According to Toshiba, the plasma of Zond's patented methods is comparable to the information that was the product of Housey's patented method. D. 15 at 9. Toshiba argues that, like Housey's information, Zond's plasma is intangible in that it is a gas that may be "contacted with . . . as one of many steps *en route* to a physical product." Id. However, in Bayer, the infringing product was not made using the patented process but with information ascertained through the patented process. Bayer's drug was identified as useful using Housey's patented process, but it was not made by that process. By contrast, Zond alleges that its patented processes are used in the actual synthesis of Toshiba's semiconductors. The generation of Zond's plasmas are alleged to be crucial steps in the manufacture of Toshiba's product, whereas the generation of Housey's information was not a direct step in the manufacture of Bayer's drug. Section 271(g) is implicated because Zond's patented process is used to manufacture the alleged infringing products.

The facts asserted by Zond are much closer to those at issue in Bio-Tech., 80 F.3d at 1561. There, the court held that a protein made by a host organism expressing an inserted plasmid was a product "made by" the patented process for creating the plasmid itself. Id. at

7

1561. The patent at issue was directed at making the plasmid, not the offending product. Id. at 1560-61. The infringing product, however, used the process of making the plasmid as an essential part of the overall process. Id. at 1561. Similarly, Toshiba's product allegedly uses Zond's process for making plasma as an essential manufacturing step. This means that Toshiba's semiconductors are alleged to have been "made by" the patented process, as required under § 271(g).

Toshiba's proximity argument, that the plasma generated using Zond's patented process is a nonessential and trivial component of Toshiba's chips, is also misplaced because it focuses on the plasma and not the processes by which the plasma was generated. Congress provided the courts with a two-phased proximity test. First, "[a] product will be considered made by the patented process regardless of any subsequent changes if it would not be possible or commercially viable to make that product but for use of the patented process." S. Rep. 100-83 (1987); see Bio-Tech., 80 F.3d at 1561. Zond alleges that, for Toshiba to make its chips, "unique manufacturing processes had to be developed" by or for Toshiba that "employ Zond's patented technology . . . ." D. 13 ¶ 24. Second, "[a] product will be considered to have been made by a patented process if the additional processing steps which are not covered by the patent do not change the physical or chemical properties of the product in a manner which changes the basic utility of the product by the patented process." S. Rep. 100-83 (1987). Toshiba does not argue that the steps to manufacture its chips not covered by Zond's patents change the properties of the chips in a manner that alters their utility. D. 15 at 11-13. At this early stage of the litigation, Zond's allegations sufficiently allege proximity such that Zond's claim of direct infringement may proceed.

Accordingly, Toshiba's motion to dismiss Zond's direct infringement claim is DENIED.

### B. Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To survive a motion to dismiss, Zond must allege facts that plausibly demonstrate that Toshiba (1) had knowledge of Zond's patents; (2) knowingly induced the infringing acts; and (3) acted with specific intent to induce infringement by another. Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009); see Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011) (holding "that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement"). Induced infringement claims are outside the purview of Form 18, which governs only direct infringement actions, and the allegations supporting such claims must satisfy the pleading requirements set forth in Iqbal and Twombly. In re Bill of Lading, 681 F.3d at 1335.

Toshiba argues that Zond's induced infringement claim must be dismissed because Toshiba did not have any pre-suit knowledge of the allegedly infringed patents. D. 15 at 12. The amended complaint alleges two ways in which Toshiba acquired knowledge of the patents-in-suit. First, Zond states that before initiation of the lawsuit, Toshiba "attended and participated in numerous industry conferences, including without limitation the 2007 SEMICON WEST in the United States where Zond's patented technology was showcased, including through presentations and marketing materials identifying the Patents-in-Suit." D. 13 ¶ 32. Second, Zond relies on the filing of the original complaint on July 3, 2013 as a basis for Toshiba's knowledge of the patents. Id. ¶ 33.

Construed in the light most favorable to Zond, the Court concludes that one may infer from these allegations that Toshiba possessed knowledge of the patents-in-suit prior to the filing of the operative pleading. The factual allegations "need only give the defendant fair notice of

9

what the . . . claim is and the grounds upon it rests." Twombly, 550 U.S. at 555. There is no heightened pleading standard applicable to claims for induced infringement. ParkerVision, Inc. v. Qualcomm Inc., No. 3:11-cv-719-J-37TEM, 2013 U.S. Dist. LEXIS 44556, at *10-11 (M.D. Fla. Mar. 28, 2013). Zond alleges that Toshiba learned of the patents-in-suit from industry conferences, including the 2007 SEMICON WEST, and that allegation gives Toshiba fair notice of the grounds for Zond's assertion of knowledge.

Toshiba further asserts that Zond has failed to adequately allege intent.[2] The pleading must allege that Toshiba intended for its customers, suppliers, OEMs and ODMs to infringe the patents-in-suit. In re Bill of Lading, 681 F.3d at 1139. Zond's alleges that Toshiba "with intent" actively encouraged its customers, suppliers, OEMs and ODMs to offer, sell or import the infringing semiconductor devices. E.g., D. 13 ¶ 36. Further, according to Zond, Toshiba "actively entices" its OEMs and ODMs "through advertising, marketing and sales activity . . . ." Id. Such allegations, and the intent that can be inferred from Toshiba's knowledge of Zond's patents, suffice for pleading purposes here. Once Toshiba had knowledge of Zond's patents, it also knew that the use, sale or import of Toshiba's semiconductor devices by the OEMs and others would constitute infringement. Zond's enticement of the OEMs and others implies intent for those parties to infringe. SK Hynix, 2014 WL 346008 at *5; Fujitsu, 2014 WL 69035 at *7.

Accordingly, Toshiba's motion to dismiss Zond's inducement infringement claim is DENIED.

### C. **Willful Infringement**

---

[2] Toshiba makes a third argument as to why the amended complaint insufficiently alleges induced infringement: there was no underlying direct infringement. In re Bill of Lading, 681 F.3d at 1333 (noting that "liability for indirect infringement of a patent requires direct infringement"). As discussed above, however, this Court concludes that Zond has adequately pled direct infringement.

"To establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and that "this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

Zond alleges that Toshiba demonstrated a "deliberate and conscious decision to infringe . . . or, at the very least, a reckless disregard of Zond's patent rights." See, e.g., Am. Compl., D. 13 ¶ 37. As discussed above, Zond also sufficiently alleges that Toshiba possessed knowledge of the patents-in-suit prior to the filing of this action through various trade conferences. Zond, therefore, has sufficiently alleged willful infringement.

Accordingly Toshiba's motion to dismiss the willful infringement claim is DENIED.

## IV. Conclusion

For the foregoing reasons, Toshiba's motion to dismiss, D. 14, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge